Submitted on briefs November 14, 1972, reversed April 19, 1973

CHARLES L. BROWN ET UX, *Respondents, v.*
UNITED STATES NATIONAL BANK
OF OREGON, *Appellant.*

509 P2d 442

Cleveland C. Cory, Clarence R. Wicks, William M. McAllister, and Davies, Biggs, Strayer, Stoel & Boley, Portland, filed the briefs for appellant.

Mervyn H. Loya and Theodore Richter, Eugene, filed an amicus curiae brief on behalf of Lane County Legal Aid Service, Inc., Eugene.

HOWELL, J.

Plaintiffs filed this action at law charging the defendant bank with trespass and conversion of a used automobile which had been repossessed by defendant. Defendant appeals from a judgment entered on a verdict for plaintiffs.

While the defendant alleges various assignments of error relating to the refusal of the trial court to give certain instructions and to grant defendant a directed verdict, the parties agree that the cause presents only one issue: Did the defendant bank's repossession of plaintiffs' auto without notice and without a prior hearing amount to a deprivation of plaintiffs' property without due process in violation of the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution?

On November 14, 1970, plaintiffs purchased an automobile on an installment sale contract providing for monthly payments. The auto dealer subsequently sold the contract to the defendant, United States National Bank of Oregon.

---

McAllister, J., did not participate in this decision.

The agreement provided that in the event of default by the purchaser, the bank, without notice to the purchaser, could "enter any place where the property may be found, and take and remove the same and any property found in or attached to" the auto.

The agreement also allowed the bank to "elect any other legal or equitable remedy, including all remedies available under the Uniform Commercial Code" for the recovery of the property.

The plaintiffs failed to make any payments after January, 1971, and in May, 1971, a field representative of the defendant bank advised plaintiffs that the payments must be made or the bank would take the car. Plaintiffs advised the defendant to secure a court order and they would "give the car up peaceably."

On the night of May 19, 1971, the field representative of the bank repossessed the car. No breach of the peace was involved.

The plaintiffs contend that § 9-503 of the Uniform Commercial Code (ORS 79.5030)[1] authorizing the creditor to use self-help in taking possession of the collateral in the event of default is unconstitutional as a violation of the Due Process Clause of the Fourteenth Amendment.

The plaintiffs' constitutional argument is based on the decision of the United States Supreme Court in *Fuentes v. Shevin*, 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556 (June 1972). There, the Supreme Court was

---

[1] "79.5030 Secured party's right to take possession after default. Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *"

presented with the question of the constitutionality of Florida and Pennsylvania laws allowing a creditor to secure a writ of replevin to seize goods of a defaulting debtor. The laws of both states allowed the sheriff to seize the property without prior notice and opportunity for the debtor to have a hearing before the seizure.

The Supreme Court stated that procedural due process requires an opportunity for a hearing before the state authorizes its agents to seize property in the possession of one person on the application of another. The court concluded that the Florida and Pennsylvania replevin laws allowing summary seizure of property by state agents constitute "a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor." *Fuentes v. Shevin*, 407 US 67, 92 S Ct 1983, 2002.

However, in deciding that the statutes were unconstitutional as violations of the Due Process Clause of the Fourteenth Amendment, the Supreme Court specifically pointed out that its holding was a "narrow one." Moreover, the court stated that the right to a prior hearing attaches only to the deprivation of interests within the protection of the Fourteenth Amendment, preventing a *state* from depriving a citizen of his property without due process of law. The opinion in *Fuentes* emphasizes that the constitutional proscription attaches to the taking of property by the state or its agents or officials. *Greene v. The First National Exchange Bank of Virginia*, 348 F Supp 672 (WD Va Sept 1972).

■ We believe that the decision in *Fuentes* is restricted to direct acts by a state or its agents or

officials, and does not include, within the purview of due process under the Fourteenth Amendment, passive state action such as the enactment of § 9-503 of the Uniform Commercial Code. Neither do we believe the decision applies to self-help provisions for repossession by private persons as contained in the conditional sales contract in the instant case.[9]

Several federal and state courts have been presented with the specific issue involved in the case at bar.

The United States District Court for the Southern District of California apparently is the only court

---

[9] The dissenting opinion of three justices in *Fuentes* stated, in regard to situations similar to the instant case:

"The Court's rhetoric is seductive, but in end analysis, the result it reaches will have little impact and represents no more than ideological tinkering with state law. *It would appear that creditors could withstand attack under today's opinion simply by making clear in the controlling credit instruments that they may retake possession without a hearing, or, for that matter, without resort to judicial process at all.* Alternatively, they need only give a few days' notice of a hearing, take possession if hearing is waived or if there is default; and if hearing is necessary merely establish probable cause for asserting that default has occurred. It is very doubtful in my mind that such a hearing would in fact result in protections for the debtor substantially different from those the present laws provide. On the contrary, the availability of credit may well be diminished or, in any event, the expense of securing it increased.

"None of this seems worth the candle to me. The procedure which the Court strikes down is not some barbaric hangover from bygone days. The respective rights of the parties in secured transactions have undergone the most intensive analysis in recent years. The Uniform Commercial Code, which now so pervasively governs the subject matter with which it deals, provides in Art. 9, § 9-503, that:

'Unless otherwise agreed a secured party has on dedefault the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of peace or may proceed by action. * * *.'" 92 S Ct at 2005. (Emphasis added.)

which has held that self-help repossessions pursuant to the parties' agreement and as authorized by the Uniform Commercial Code constituted state involvement sufficient to invoke the protection of the Fourteenth Amendment. *Adams v. Egley,* 338 F Supp 614 (SD Cal Feb 1972). The issue before that court was whether the self-help repossession of collateral constituted the deprivation of a constitutional right by any person acting "under color of state law" as proscribed by the Civil Rights Act, 42 USC § 1983. The court found that the provisions of the Uniform Commercial Code set forth a "state policy" and, as the security agreements executed by the parties are an "embodiment of that policy," the acts of repossession were made "under color of state law." In reaching its decision the court relied upon the decision of the United States Supreme Court in *Reitman v. Mulkey,* 387 US 369, 87 S Ct 1627, 18 L Ed 2d 830 (1967). In *Reitman* the court was concerned with racial discrimination in the rental and sale of property. Previously, California had adopted legislation prohibiting discrimination in the rental and sale of property. Later, a constitutional amendment was enacted which provided that neither the state of California nor its agents or subdivisions could prevent a person from renting or selling his property to whomever he chose. The effect of the amendment was to overturn the prior anti-discrimination statutes. The Supreme Court held that the amendment operated as state encouragement of, and involvement in, private discrimination. As such, state action was involved and was unconstitutional under the Fourteenth Amendment.[9]

---

[9] The effect of the *Adams* decision is that any sales contract incorporating the repossession sections of the Uniform Com-

Other courts have reached conclusions opposite to the decision in *Adams*. The United States District Court for the Northern District of California was presented with the same issue under the Civil Rights Act in *Oller v. Bank of America*, 342 F Supp 21 (ND Cal Feb 1972). The court refused to follow the decision by the United States District Court for the Southern District of California in *Adams*. The court found that the defendant's repossession under the authority of the Uniform Commercial Code was a "private act taken by a private organization to protect its security interest in personal property that is subject to a conditional sales contract. The courts have been almost uniform in refusing to color such transactions as 'State actions.' "[20] 342 F Supp at 23.

The same result was reached under the Civil Rights Act in *McCormick v. First National Bank of Miami*, 322 F Supp 604 (SD Fla, Feb 1971).

Subsequent to the decision in *Fuentes* at least two federal district courts have held that self-help repossessions authorized under the Uniform Commercial Code do not involve the states sufficiently to amount to "state action" or actions "under color of state law." *Greene v. The First National Exchange Bank of Virginia*, supra, and *Kirksey v. Theilig*, 351 F Supp 727 (D Colo Nov 1972). The same result was

---

mercial Code constitutes sufficient state action to come within the ambit of the Due Process Clause. Comment, 3 Loy U L J 451, 460.

[20] The court in *Oller* was critical of the *Adams* court for its reliance on Reitman v. Mulkey, 387 US 369, 87 S Ct 1627, 18 L Ed 2d 830 (1967), stating that *Reitman* involved racial discrimination in violation of due process, which was not present in *Adams* or *Oller*. Both *Adams* and *Oller* are on appeal to the Ninth Circuit Court of Appeals at this time.

reached by the Superior Court of New Jersey, Chancery Division, in *Messenger v. Sandy Motors, Inc.,* 121 NJ Super 1, 295 A2d 402 (Ch Sept 1972).

We conclude that state authorization under the Uniform Commercial Code of private self-help repossessions is not sufficient state involvement in the private acts of individuals to constitute the "state action" necessary to invoke the Due Process Clause of the Fourteenth Amendment. The action by the state or its agents must not be passive but direct, as in *Fuentes,* or to the extent that the state could be said to be the instigator or the accomplice of acts amounting to encouragement of discrimination, as in *Reitman.* Here, whether the repossession was done under the conditional sales agreement or under the authorization of the Uniform Commercial Code, we are concerned with the private acts of private individuals. The repossession did not involve the state or any aid or assistance from the state or its officers or agents. Under these circumstances it cannot be said that the *state* has deprived the plaintiffs of their property without due process of law.

Reversed with directions to enter a judgment for defendant.