[No. 44164.   En Banc.   June 23, 1977.]

KENNEBEC, INC., ET AL, *Appellants*, v. BANK OF THE WEST, ET AL, *Respondents*.

*Edwards, Wetherall & Barbieri,* by *Richard L. Barbieri* and *Malcolm L. Edwards,* for appellants.

*Matsen, Cory, Matsen & Sprague,* by *Patrick J. Layman* and *Thomas E. Sprague,* for respondents.

*John A. Gose* and *Diane R. Stokke,* amici curiae.

HICKS, J.—This is a direct appeal from a dismissal in the trial court of one of appellants' multiple claims. The appeal challenges on due process grounds the trust deed act in Washington, RCW 61.24, as the act existed prior to the 1975 amendments. We find no due process violation under the facts of this case.

Respondents, Bank of the West and Bankwest Mortgage Company (Bankwest), caused the trustee under deeds of trust to record notice of sale and to thereafter sell the property through a nonjudicial foreclosure of the deeds of trust. Appellants Stabbert, husband and wife, and their solely–owned corporation, Kennebec, Inc., plaintiffs below, filed a complaint to quiet title and for damages. Appellants alleged that they were deprived of a significant interest in the property without prior notice at a meaningful time and manner and without an opportunity to be heard on the matter contrary to due process procedure required by the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution. They contend that lack of due process rendered the trustee's notice and sale invalid and voided the deed.

From time to time, Bankwest loaned substantial sums of money to Kennebec, Inc., and the loans were guaranteed by Stabbert. The financing agreements between appellants and Bankwest were entered into knowingly by all parties and were intended to be financing for a phased construction of a residential condominium development on the shores of Lake Sammamish.

The condominium sales lagged and appellants fell in arrears on payments due Bankwest on two notes secured by deeds of trust. The property represented by the two deeds of trust was sold at the trustee's sale to Bank of the West (the beneficiary/lending institution) for the amount of the debt owing on both notes.

Appellants do not contend that the procedure for nonjudicial foreclosure prescribed by RCW 61.24 was not followed or that they were not in default on the loans secured by the property. Rather, they challenge the statutory procedure as representing significant state involvement. It is said to be violative of due process under the federal and state constitutions because in the act there is no notice and no hearing provided for at a meaningful time prior to a taking of a significant property interest.

Appellants argue that the state, having enacted legislation and "creating" the remedy of nonjudicial foreclosure, is involved significantly so that the foreclosure, though accomplished in fact between private parties, was state action. Therefore, the due process clause of the United States Constitution and the Constitution of the State of Washington are called into play.

Bankwest sets up a number of defenses to appellants' claim of lack of due process. As we understand them, they are that (1) this is a private remedy agreed to knowingly by the contracting parties and that insufficient state contact is involved to make the nonjudicial foreclosure in this instance state action; (2) if there is state action, the notice and opportunity to be heard provided by RCW 61.24 meets constitutional requirements and that there was no significant property deprivation until the trustee's sale; and (3) in any event, right to notice and hearing was waived by plaintiffs in this case because of their experience in dealing with agreements of this kind.

We start with the well-known principle that "An act of the legislature is presumed to be constitutional and valid and ought not be declared invalid unless it appears to be so

beyond a reasonable doubt." *State v. Primeau,* 70 Wn.2d 109, 111, 422 P.2d 302 (1966).

■ As we noted in *Faircloth v. Old Nat'l Bank,* 86 Wn.2d 1, 541 P.2d 362 (1975), private conduct is not controlled by the Fourteenth Amendment due process clause unless significantly intertwined with state involvement. The Supreme Court said in the *Civil Rights Cases,* 109 U.S. 3, 11, 27 L. Ed. 835, 3 S. Ct. 18 (1883):

It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment.

In relevant part the U.S. Const. amend. 14, § 1 provides:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any state* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(Italics ours.)

Over the course of a century of case-by-case application, the Supreme Court has developed the "state action" doctrine. As the fundamental purpose of the Fourteenth Amendment was the eradication of slavery and racial discrimination, the development and expansion of state action doctrine has occurred primarily under the equal protection clause of the amendment in cases involving racial discrimination. The court has, in the course of time, enlarged state action to encompass "private" conduct under certain circumstances. But the state must be involved, and the test is *significant state involvement. Moose Lodge 107 v. Irvis,* 407 U.S. 163, 173, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972); *Reitman v. Mulkey,* 387 U.S. 369, 380, 18 L. Ed. 2d 830, 87 S. Ct. 1627 (1967).

It is appellants' position that RCW 61.24 changed the public policy of the State of Washington as it had existed for almost 100 years when it permitted nonjudicial foreclosure of deeds of trust. Appellants say that, because the statute enables persons and corporations to do what they

could never have done in this state before its enactment and because it confers powers which previously could never have been granted, the act constitutes "state action." In short, appellants say RCW 61.24 is the essence of "state action" independent of any consideration of the specific roles which state officials play in its implementation, and independent of the encouragement which it provides to the utilization of private foreclosures.

*Faircloth* involved contentions similar to those in the case at bench. There a provision of the Uniform Commercial Code, RCW 62A.9–503, was under attack as violative of due process because of "state action." We held that it was not.

*Faircloth* would be controlling and dispositive of this case without further discussion but for one fact. In deciding that case, we followed the lead of the majority of courts that had considered the problem and rested our decision heavily on the rationale that RCW 62A.9–503 was but a limited codification of the common law. Appellants distinguish the case at bench on that ground. Appellants say nonjudicial foreclosure was never part of the common law of Washington. We will address that point later.

*Faircloth* could have been decided on grounds other than that it was a codification of the common law. *Greene v. First Nat'l Exch. Bank,* 348 F. Supp. 672 (W.D. Va. 1972), and *Brown v. United States Nat'l Bank,* 265 Ore. 234, 509 P.2d 442 (1973), both dealt with the same provision of the Uniform Commercial Code and the same challenge of being violative of due process because of "state action." Neither court found significant state involvement sufficient to constitute "state action" and neither court rested its decision on the rationale that the provision was a codification of common law.

Both *Greene* and *Brown* were decided on the basis of the distinction between *passive* and *active* state involvement. For significant state involvement, active participation by the state in some manner must be found to constitute "state action" for due process purposes. An example of

active state participation is found in *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 511 P.2d 1002 (1973) (garnishment action). On the other hand, mere enactment of a statute which permits private conduct, with no further significant participation by the state, is passive involvement and does not constitute "state action." For a further example of a case concerning permissive legislation and found to be insufficient involvement to constitute "state action" even though racial discrimination was involved, *see Dorsey v. Stuyvesant Town Corp.*, 299 N.Y. 512, 87 N.E.2d 541, 14 A.L.R.2d 133 (1949), *cert. denied,* 339 U.S. 981, 94 L. Ed. 1385, 70 S. Ct. 1019 (1950).

In *Greene,* the court at page 674, after examining a number of cases which had found "state action," concluded that "In all these cases some state official, agency, or branch took some direct action concerning an individual's rights or property without adequate notice or hearing." The court then went on to reason, at page 675:

> It is this court's opinion, based on *Fuentes* [*Fuentes v. Shevin,* 406 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972)] and the prior cited cases, that passive state action such as is present in the instant case is not violative of due process. There must be active and direct state action.
>
> The Fourteenth Amendment can control only the actions of states, not private individuals. Therefore, because the operation of the statute involved does not require the aid, assistance, or interaction of any state agent, body, organization, or function, the *state* has not deprived the plaintiff of his property.

In *Brown,* at page 241, the Oregon Supreme Court reasoned much the same as in *Greene* and said the following:

> We conclude that state authorization under the Uniform Commercial Code of private self–help repossessions is not sufficient state involvement in the private acts of individuals to constitute the "state action" necessary to invoke the Due Process Clause of the Fourteenth Amendment. The action by the state or its agents must not be passive but direct, as in *Fuentes,* or to the extent that the state could be said to be the instigator or the

accomplice of acts amounting to encouragement of discrimination, as in *Reitman.* Here, whether the repossession was done under the conditional sales agreement or under the authorization of the Uniform Commercial Code, we are concerned with the private acts of private individuals. The repossession did not involve the state or any aid or assistance from the state or its officers or agents. Under these circumstances it cannot be said that the *state* has deprived the plaintiffs of their property without due process of law.

We find that the present case lends itself to the same rationale as *Greene* and *Brown.*

■ While appellants assert that the common law of this state never encompassed the remedy of nonjudicial foreclosure, we are not convinced. The remedy may never have been utilized, but it was available as early as Washington's territorial days.

The common law of England was the law of decision in Washington Territory as it is in the state today. RCW 4.04.010; *Garrett v. Byerly,* 155 Wash. 351, 353, 284 P. 343, 68 A.L.R. 254 (1930). Mortgages containing a power of sale and trust deeds were given effect at common law. 4 W. Lacy, *Kent's Commentaries on American Law* 147 (1889); *Croft v. Powel & Al.,* 2 Comyns 603, 92 Eng. Rep. 1230; *Clay v. Sharpe,* (In Chancery Reg. Book, A. fol. 66 (1802)); *Corder v. Morgan,* 18 Eng. Ruling Cas., 442 (1811). Until 1869, when what is presently codified as RCW 7.28.230 was enacted, a mortgage containing a power of sale or a deed of trust, either of which could have been nonjudicially foreclosed, would have been given effect in the Washington Territory. However, the legislature changed the public policy of this jurisdiction in regard to mortgages:

But the territorial legislature of 1869 (Session Laws, 1869, p. 130, § 498) provided that, "A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law," and since such enactment a mortgage executed

in this state, whatever its terms, has been merely a security incident to, and for the payment of, the principal debt.

The statute is also expressive of the public policy of the state . . .

*Norfor v. Busby,* 19 Wash. 450, 452, 53 P. 715 (1898).

In 1965 the legislature, in enacting what is codified as RCW 61.24, again changed the public policy of this state. Since 1965, deeds of trust providing for nonjudicial foreclosure have been permissible in this state as they would have been at common law when Washington was first a territory. To the extent that RCW 61.24 codifies common law, this case fits squarely within and is controlled by *Faircloth v. Old Nat'l Bank,* 86 Wn.2d 1, 541 P.2d 362 (1975). *Accord, Northrip v. Federal Nat'l Mortgage Ass'n,* 527 F.2d 23 (6th Cir. 1975).

█ In light of the above, we consider RCW 61.24 and the case at bench. No state official, using that term in its broadest sense, has been involved in this matter other than in the most ministerial manner prior to the challenge of the act's constitutionality. The act did not compel any of the parties to contract in the manner in which they did. Other financial and security arrangements might have been selected.

RCW 61.24 is entirely noncoercive. The state takes only a neutral position. It neither commands nor forbids nonjudicial foreclosure. If the parties elect to contract and use the deed of trust device, the statute regulates its manner of operation almost solely for the protection of the debtor. But the state does not involve itself in the transaction in any significant manner; its involvement at most is *passive.* The creditor may, if he chooses, elect to involve the state by utilizing judicial foreclosure and thereby preserving any deficiency that may exist. However, if he opts to foreclose nonjudicially, he does not involve the state, but by so doing he is restricted to the value of his security.

It is our view that absent racial discrimination overtones, significant "state action" cannot be predicated upon such

passive involvement as the enactment of permissive state laws which merely authorize, and to that extent, encourage private conduct. And this is so regardless of the fact that a permissive statute may have changed previous public policy. Private action is not to be attributed to the state for due process purposes of the Fourteenth Amendment simply because the conduct is permitted by state law, whether statutory or judicial.

We hold that RCW 61.24, as it existed prior to the 1975 amendments, is passive state involvement and does not constitute significant "state action" and, therefore, it is neither violative of the due process clause of the Fourteenth Amendment nor of article 1, section 3 of the Washington State Constitution. Since this is dispositive of the case, we do not reach the other defenses advanced by Bankwest.

The order of dismissal of the trial court is affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., and COCHRAN, J. Pro Tem., concur.

Petition for rehearing denied August 18, 1977.