Submitted on record and briefs May 6, affirmed October 13,
reconsideration denied November 18, 1982,
petition for review denied January 11, 1983 (294 Or 391)

WRIGHT et al,
*Appellants,*

*v.*

ASSOCIATES FINANCIAL SERVICES
COMPANY OF OREGON, INC.,
*Respondent.*

(No. 16-80-02377, CA A21242)

651 P2d 1368

Robert J. Wright, Noti, and Thomas J. Martin, Eugene, filed the briefs in propriae personae for appellants.

Darst B. Atherly, Ausey H. Robnett, III, and Atherly, Butler & Burgott, Eugene, filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this proceeding for declaratory relief, plaintiffs sought a decree declaring that (1) a trust deed to plaintiff Wright's property could not be foreclosed by advertisement and sale; (2) the provisions of the Oregon Trust Deed Act (Act) which permit a trustee to foreclose a trust deed without judicial intervention are unconstitutional; (3) the loan secured by the trust deed was not in default at the time of foreclosure; (4) defendant had breached a fiduciary duty; (5) defendant conspired with others to deprive plaintiffs wrongfully of the property subject to the trust deed; (6) plaintiffs retained redemption rights; and (7) defendant breached and frustrated the purpose of the parties' agreement. They asked for compensatory and punitive damages in addition to equitable relief. They appeal from a trial court judgment dismissing their complaint on the ground that they failed to sustain their burden of proof on all causes of action alleged in their complaint.

In December, 1978, plaintiff Wright approached defendant for a consumer loan. His application was accepted and his monthly payments of $766.77 began February 5, 1979, to continue for ten years. Each succeeding payment was due on the fifth day of the month. The loan was secured by a trust deed to real property owned by Wright, naming defendant as beneficiary. The trust deed described the property in detail and stated in bold type: "The above described real property is not currently used for agricultural, timber or grazing purposes." Paragraph 11 of the trust deed specified that, in the event of default, if the land were not currently used for agricultural, timber or grazing purposes, the beneficiary could elect to foreclose by advertisement and sale. At the time of its execution, Wright read the trust deed and indicated his familiarity with it.

Wright began making payments in February, 1979, and continued to make them through the spring of 1979, when he entered into an agreement with plaintiff Martin, who took over Wright's payments. Although defendant accepted payments from Martin, it did not release Wright from responsibility for the debt. Wright did not make any payments on the loan after May, 1979, because he consid-

ered the loan to be Martin's responsibility. Later, Wright sold a small portion of the property secured by the trust deed to Harvey, and, as part of the agreement, Harvey assumed the payments to defendant.

The account became delinquent in July, 1979. Although several payments were received during the succeeding months, they were not sufficient to bring the payments current. During the fall of 1979, defendant contacted Wright on several occasions and requested that he bring the account current. Wright contacted Harvey, but he did not determine whether the payments were actually being made by Harvey.

On February 1, 1980, the account was $1,030 delinquent. Defendant sent Wright a letter informing him that his account had to be brought current by February 15, 1980. Wright responded in a letter dated February 13, 1980, in which he acknowledged that defendant would probably foreclose. In fact, defendant was considering foreclosure at that time but had not yet made that decision. During February, 1980, Harvey went to defendant's office to make a payment. Defendant told him that foreclosure was being considered and that, although a partial payment would be accepted, it would not prevent foreclosure if defendant decided to foreclose unless the account was made current. Harvey did not make a payment on that visit. The account was $1,796 delinquent on February 5, 1980.

On March 6, 1980, defendant's attorney sent a letter to Wright notifying him that the account was delinquent, that defendant would insist on strict compliance in the future, that the April 5 payment must be made on time and that the delinquency must be satisfied by March 31, 1980. Wright did not respond to the March 6 letter, made no further payments and did not bring the account current. On March 13, Wright and Martin filed the present suit.

Defendant declared a default on May 2. On May 6, a notice of sale was recorded and sent to the interested parties. The sale was advertised in the local newspaper for the requisite statutory period, and both plaintiffs saw the advertisement. On August 18, defendant's attorney notified Wright that the foreclosure sale would be dismissed if Wright would bring the account current and pay the

statutory costs. The amount required at that time to stop the foreclosure was $7,296. Wright did not respond. The trustee sold the property at public auction on September 10, 1980, for $50,007.

■ Plaintiffs first contend that the trust deed cannot be foreclosed by advertisement and sale. They initially argue that the provisions of the deed itself preclude foreclosure by this method. Paragraph 11 of the trust deed provides in pertinent part:

> "11. Upon default by grantor in payment of any indebtedness secured hereby or in his performance of any agreement hereunder, the beneficiary may declare all sums secured hereby immediately due and payable. In such an event and if the above described real property .is currently used for agricultural, timber or grazing purposes, the beneficiary may proceed to foreclose this trust deed in equity, as a mortgage in the manner provided by law for mortgage foreclosures. *However, if said real property is not so currently used, the beneficiary at his election may proceed to foreclose this trust deed in equity as a mortgage provided by law or direct the trustee to foreclose this trust deed by advertisement and sale.*" (Emphasis supplied.)

Plaintiffs urge that we construe the word "currently" to mean at the time of default. Under that construction, if, at the time of default, the land was used for agricultural, timber or grazing purposes, the beneficiary would be unable to foreclose the property through advertisement and sale, even though the land was not so used when the agreement was entered into. At trial evidence was offered that timber was being harvested on the property at the time of foreclosure but not when the agreement was signed.

The language of the trust deed comes from the Act. ORS 86.710(2) provides:

> "Transfers in trust of an estate in real property shall be foreclosed as mortgages *unless the instrument creating the trust provides that the real property is not currently used for agricultural, timber or grazing purposes.* Where the trust deed states that the real property involved is not used for agricultural, timber or grazing purposes, such statement shall be binding and conclusive upon the grantor of the trust deed and his successors in interest." (Emphasis supplied.)

That statute does not condition foreclosure rights on the use to which the land is being put when the default occurs. We interpret the word "currently" in paragraph 11 of the trust deed to refer to the use of the land on the date when the trust deed was executed. A provision of the trust deed specifies in bold print that the real property involved "is not currently used for agricultural, timber or grazing purposes." Plaintiffs do not dispute that at the time the trust deed agreement was entered into the land was not so used. That being the case, defendant, as beneficiary, properly pursued the remedy of foreclosure by advertisement and sale provided to it both by the agreement and the Act.

■ Plaintiffs next contend that the filing of their suit for breach of contract precluded defendant from foreclosure of the trust deed by advertisement and sale. They rely on ORS 86.735, which provides:

> "The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.760 if:
>
> " * * * * *
>
> "(4) No action, suit or proceeding has been instituted to recover the debt or any part of it then remaining secured by the trust deed, or, if such action or proceeding has been instituted, the action or proceeding has been dismissed."

This section parallels the provision in the mortgage and lien foreclosure law that prohibits a creditor from maintaining separate actions to foreclose on the security and to recover a judgment on the debt. ORS 88.040; *Banteir v. Harrison,* 259 Or 182, 186, 485 P2d 1073 (1971). Here, defendant's action to foreclose on the security does not constitute an action to recover a judgment on the debt. Defendant properly proceeded with the foreclosure.

■ Plaintiffs' third contention is that the Act, by not requiring notice or hearing prior to recording the notice of sale, violates their constitutional right to due process under the Fourteenth Amendment to the United States Constitution. We disagree. *See Brown v. U.S. Nat'l Bank,* 265 Or 234, 509 P2d 442 (1973); *see also Shirley v. State National Bank of Connecticut,* 493 F2d 739 (2d Cir), *cert den* 419 US 1009 (1974); *Adams v. Southern California First National Bank,* 492 F2d 324 (9th Cir 1973), *cert den* 419 US 1006

(1974); *Brunswick Corporation v. J & P, Inc.,* 424 F2d 100 (10th Cir 1970); *Garfinkle v. Superior Court,* 21 Cal3d 268, 146 Cal Rptr 208, 578 P2d 925, *appeal dismissed* 439 US 949 (1978), *Kennebec v. Bank of the West,* 88 Wash 2d 718, 565 P2d 812 (1977).

■ Plaintiffs next contend that defendant was bound by previous waivers of the prompt-payment clause and that defendant improperly declared them in default when payments were discontinued in February, 1980. A vendor or creditor who has, by his past actions, led a debtor to believe that the terms of their agreement requiring prompt payment of a certain sum will not be strictly enforced must, before declaring a forfeiture, give the debtor reasonable notice of his intention to insist on strict compliance with the terms of the contract in the future. The debtor must be allowed a reasonable opportunity to make up delinquent payments. *See Farmer v. Groves,* 276 Or 563, 567, 555 P2d 1252 (1976); *Soltis v. Liles,* 275 Or 537, 542, 551 P2d 1297 (1976); *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971). However, not every acceptance of a late payment constitutes a waiver.[1] All of the circumstances and conduct of the parties in their dealings and treatment of the contract must be considered. *Gray v. Pelton,* 67 Or 239, 244, 135 P 755 (1913).

■ Here, Wright indicated in February, 1980, his awareness that defendant considered his loan to be in default. In March, 1980, defendant notified plaintiff of its intention to proceed with a foreclosure action if the account were not made current within 30 days. On May 2, 1980, the loan was formally declared in default. If defendant's past actions in allowing late and partial payments did constitute a waiver of the prompt-payment term of the contract, its actions between February 1 and May 2, 1980, constituted adequate notice of its intent to enforce the terms of the contract strictly thereafter, and defendant afforded plaintiffs sufficient opportunity to make up the delinquency payments. When plaintiffs failed to make the April payment and to satisfy the delinquency, defendant was

---

[1] *See Lent v. Towery,* 271 Or 41, 530 P2d 77 (1975) (seller who accepted first payment late still entitled to prompt payment); *Zerkel v. Lindsey,* 270 Or 517, 528 P2d 1041 (1974) (seller did not waive "time of the essence" clause by accepting one late payment).

entitled to declare a default and proceed accordingly against the security.

■        Plaintiffs also contend that defendant breached a fiduciary duty by appointing as a successor trustee its own attorney, who then sold the land at public auction below fair market value. The threshold question is whether defendant owed plaintiffs a fiduciary duty in this respect. Plaintiffs rely on *Harper v. Interstate Brewery Co.*, 168 Or 26, 40, 120 P2d 757 (1942), where the court held that a mortgagee in the exercise of a power of sale of real property owes a duty to act in good faith by using all reasonable efforts to make the sale beneficial to the mortgagor by obtaining the best price reasonably obtainable for the property. Although a deed of trust securing a debt may serve the purpose and perform the function of a mortgage with a power of sale, there is a fundamental difference between them. A deed of trust is executed to a third person or trustee, whereas a mortgage is executed directly to the secured creditor. *See* 55 Am Jur 2d, Mortgages § 15, 204-205. In this case, the trustee, not defendant as beneficiary of the trust deed, owed a fiduciary duty to plaintiffs. Defendant's choice of its attorney to serve as trustee was permissible. *See* ORS 86.790.[2] If the trustee breached a duty of good faith and due diligence, plaintiffs might have had a claim against him. Here, plaintiffs failed to name the trustee as a party defendant.

■        Plaintiffs' final contention is that defendant breached the contract by refusing to accept payments prior to the sale. Plaintiffs allege that defendant refused to accept payment because "defendant had already decided to go ahead and sell off the property." This contention lacks merit. Testimony at the trial indicated that in February, 1980, Harvey tendered $770, which would have covered February's payment but would not have brought the account current. Harvey was told only that the partial

---

[2] ORS 86.790 provides in relevant part:

"(1) Except as provided in ORS 713.012, the trustee of a trust deed under ORS 86.705 to 86.795 shall not be required to comply with the provisions of ORS chapters 707 and 709 and shall be:

"(a) An attorney who is an active member of the Oregon State Bar;

"* * * * *."

payment of the delinquent balance would not necessarily prevent a foreclosure. Although at that time defendant's representative miscalculated the exact amount of the arrearage, a deficit did exist. Harvey disputed that any amount was in arrears, and he declined to make any payment. The trial court found that this conduct by defendant did not induce, encourage or cause plaintiffs' default, and we concur in that finding.

■ Finally, plaintiffs ask that we allow them a right to redeem the property. They argue that their rights were extinguished by defendant's sale of the property while this case was pending in the trial court. Plaintiffs have no statutory right of redemption under the Act. ORS 86.770. To protect the borrower's equity, the Act permits a borrower to reinstate a loan and forestall a sale by paying, prior to five days before the scheduled sale, all amounts past due. ORS 86.760. Although defendant notified plaintiffs of this option, they declined to exercise it. They therefore have lost their opportunity to protect their equity in the property.

Affirmed.