Jeffrey A. TRUMBAUER, Plaintiff,

v.

**GROUP HEALTH COOPERATIVE OF PUGET SOUND, Defendant.**

**No. C85–1583R.**

United States District Court,
W.D. Washington,
Seattle Division.

April 16, 1986.

---

Darcia Owings Tudor, Seattle, Wash., for plaintiff.

Carolyn Cliff, Mark A. Hutcheson, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on defendant's motion for summary judgment. The court has carefully considered the memoranda and other materials submitted in support of and in opposition to this motion.

## I. FACTUAL BACKGROUND

This is a wrongful termination action. Plaintiff Jeffrey A. Trumbauer is a former employee of defendant Group Health Cooperative of Puget Sound.

The terms and conditions of plaintiff Trumbauer's employment as an accounting clerk or "office assistant" at Group Health were governed by a collective bargaining agreement between Group Health and the Office and Professional Employees International Union, Local ## 8 and 23. Affidavit of Barbara Allan Shickich in Support of Group Health's Motion for Summary Judgment ("Aff. Shickich"), Ex. A at 1, 18. Under this agreement, a permanent employee is subject to discharge only for "just cause." *Id.* at 5. If an employee believes that he has been discharged improperly, he may submit the issue to the grievance procedure established by the agreement. *Id.* at 15. The grievance procedure is an employee's sole recourse for any alleged violation of the agreement. *Id.* The procedure includes three possible levels of mediation and, as a last resort, binding arbitration. *Id.* at 15–16.

The collective bargaining agreement provides that a new employee who has been hired for permanent employment in a position covered by the agreement is considered a "probationary employee" for the first three months of employment. *Id.* at 3. The agreement does not state that a probationary employee may be discharged without cause, but the agreement does provide that a probationary employee may be discharged "without recourse to the grievance procedure" available to other workers. *Id.*

Trumbauer was hired by Group Health on September 6, 1984, and assigned to the accounts payable department. Affidavit of Lorraine Sawyer ("Aff. Sawyer") at 1; Affidavit of Jeffrey Trumbauer ("Aff. Trumbauer") at 2. The individual Group Health employee responsible for this hire was Lorraine Sawyer, who subsequently served as Trumbauer's supervisor. *Id.* Several years earlier, Trumbauer and Sawyer had had a brief sexual relationship. Aff. Sawyer at 2; Aff. Trumbauer at 2. It is undisputed that no such relationship existed while Trumbauer was employed at Group

Health. Trumbauer and Sawyer describe their current relationship as friendship. *Id.*

On October 18, 1984, Group Health informed Trumbauer that he was to be terminated based on Group Health's anti-nepotism policy unless suitable employment could be found for him in a position not supervised by Sawyer. Aff. Trumbauer at 3–4. Group Health then determined that, due to Trumbauer's lack of experience, Trumbauer was unqualified for any available positions. Affidavit of Willon Lew in Support of Group Health's Motion for Summary Judgment. Consequently, Trumbauer was terminated effective November 30, 1984. Aff. Trumbauer at 2. At the time of this termination, Trumbauer was still a probationary employee for purposes of the collective bargaining agreement.

Group Health's published anti-nepotism policy applies only to members of the same family. The policy provides in part:

> Group Health Cooperative may employ members of the same family; however, no employee shall supervise the work of a relative or participate in matters affecting a relative's appointment, working conditions, salary or evaluation.

Aff. Shickich, Ex. B. Trumbauer points out that the anti-nepotism policy is not strictly enforced even as to relatives. It appears that in at least a few instances a Group Health employee is allowed to supervise the work of a close family member. Supplemental Affidavit of Carolyn Cliff, Ex. A at 8, 14. It also appears that for about three years one female employee was allowed to supervise the work of a male employee who was her roommate. *Id.* at 11. However, both of these employees have now been terminated.

It is undisputed that Trumbauer had performed adequately during his employment at Group Health. According to Patricia Tyler, a union representative at Group Health for 18 years, the purpose of the probationary period provided by the collective bargaining agreement is to allow Group Health to evaluate a new employee's skills and work habits. Affidavit of Patri-

cia Tyler at 2. Tyler asserts that prior to Trumbauer's termination she knew of no instance in which a probationary employee was terminated for reasons unrelated to job performance. *Id.* A published Group Health policy on probationary employees in positions not covered by a collective bargaining agreement states that the purpose of the probationary period is to provide an opportunity to assess an employee's performance and to determine whether the employee's performance merits continued employment. Affidavit of Darcia Owings Tudor ("Aff. Tudor"), Ex. G.

In April of 1985, plaintiff Trumbauer filed this action in King County Superior Court. Trumbauer asserts state law claims for breach of contract, breach of covenant of good faith, and termination in violation of public policy and certain constitutional rights. Trumbauer seeks reinstatement, damages, and an injunction against any further action against him based on his relationship with Sawyer. Defendant Group Health removed this action to federal court on the grounds that Trumbauer's contract claims are governed by federal labor law. Group Health now moves for summary judgment.

## II. CONTRACT CLAIMS

Trumbauer's state law contract claims are couched in terms of exceptions to the employment-at-will doctrine. Under this doctrine, an employment contract indefinite as to duration is terminable at will by either employer or employee. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 233, 685 P.2d 1081, 1089 (1984). In other words, an at-will employee does not have any right to discharge only for just cause. Trumbauer asserts that the employment-at-will doctrine does not apply in the present case and that he has a contractual right to discharge only for just cause because (1) the contract under which Trumbauer is employed so provides; (2) the contract has been modified by Group Health's general promises not to discharge employees without just cause; and (3) the contract includes an implied covenant of good faith.

In addition, the court understands Trumbauer to assert a quasi-contract claim that Group Health's promises not to discharge employees without just cause give rise to obligations outside the contract that governed Trumbauer's employment.

Group Health maintains that Trumbauer's state law contract claims are pre-empted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a) (1982), which provides for actions to enforce collective bargaining agreements. As Trumbauer's contract claims are based on the collective bargaining agreement between Group Health and the office workers union, Group Health argues, these claims are essentially claims under Section 301.

Section 301 of LMRA contemplates that federal law controls the interpretation of collective bargaining agreements and governs the relationships established by such agreements. *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–03, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962). Accordingly, any state law right based on a collective bargaining agreement is pre-empted. *Id.* at 103–04, 82 S.Ct. at 576–77.

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation ... [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes. [Footnote omitted.]

*Id.* Because any state law claim that is "inextricably intertwined" with interpretation of a collective bargaining agreement could impair the uniformity and certainty of federal labor law, such claims are pre-empted whether they are pleaded in contract or in tort or in any other terms. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, ——, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). More precisely, any state law right that may exist only as an aspect of a contractual relationship and that may be waived or altered by contract is pre-empted as between an employer and an employee covered by a collective bargaining agreement. *Id.*

■ Insofar as Trumbauer's state law contract claims are based directly on the office workers' collective bargaining agreement or on a modification thereof, these claims are clearly pre-empted because federal law controls interpretation of such an agreement. Moreover, Trumbauer's claim based on an implied covenant of good faith is preempted because the covenant exists, if at all, only as an aspect of the collective bargaining agreement and is subject to waiver or alteration by contract. Finally, Trumbauer's quasi-contract claim is pre-empted because the subject matter of this claim, the proper standard for discharge, can be fixed by contract. In other words, the standard for discharge is a negotiable aspect of the relationship established by the collective bargaining agreement, and any adjudication of Trumbauer's quasi-contract claim would therefore require interpretation of the agreement. To recognize the quasi-contract claim under state law would impair the uniformity and certainty federal labor law is supposed to provide.

The court treats Trumbauer's contract and quasi-contract claims as claims under Section 301 of LMRA. In a Section 301 action, the court's task is to enforce the collective bargaining agreement between the parties.

■ Trumbauer argues that the collective bargaining agreement actually pro-

vides that probationary employees may be discharged only for just cause. Specifically, he argues that the agreement provides that, "[a]ll benefits provided herein will accrue during the probationary period," and that these "benefits" include discharge only for just cause. Aff. Shickich, Ex. A at 3. The court rejects this argument. The term "benefits" clearly refers to vacation, sick leave, and other rights that accrue over time under the agreement.

■ Under the collective bargaining agreement between Group Health and the office workers union, alleged violation of the agreement must be submitted to a grievance procedure that consists of three levels of mediation and, as a last resort, binding arbitration. The exclusivity of this grievance procedure is consistent with the federal labor policy favoring arbitration as an exclusive remedy. *See Hollins v. Kaiser Foundation Hospitals*, 727 F.2d 823 (9th Cir.1984). As a probationary employee, Trumbauer lacked access to the grievance procedure. In effect, Group Health and the union have agreed that Trumbauer and other probationary employees shall have no contractual remedy for discharge and are essentially terminable at will. Under these circumstances, Trumbauer cannot seek relief based on the collective bargaining agreement. *See Hollins*, 727 F.2d 823 (claim by probationary employee discharged without recourse to grievance procedure).

■ Trumbauer argues that Group Health's published policy stating the purposes of probationary employment, together with the atmosphere of security created by Group Health's ordinary practices with respect to probationary employees, effectively modified the collective bargaining agreement or created obligations in addition to the collective bargaining agreement, so that Group Health may terminate probationary employees only for just cause. *See* Aff. Tudor, Ex. G (policy). Trumbauer concedes that the published policy expressly does not apply to union positions and even states that union employees must consult the collective bargaining agreement for the relevant guidelines. However, Trumbauer asserts that the published policy serves to enhance the atmosphere of security for probationary employees in union positions even though the policy is not directly applicable.

This argument is unpersuasive. The collective bargaining agreement clearly indicates that a probationary employee is terminable at will. The agreement is conclusive. Even assuming that a collective bargaining agreement could be modified or supplemented by an employer's representations inconsistent with the agreement, however, Trumbauer fails to present sufficient evidence to raise an issue of fact as to such modification or supplementation. Trumbauer does not submit any evidence that Group Health actually promised specific treatment in the specific situation of discharge of a probationary employee. *Cf. Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 228–31, 685 P.2d 1081, 1088–89 (1984) (express promise required). He cannot point to any applicable provision from an employee handbook or other materials circulated among employees. *Id.* Even if the published policy as to non-union positions were applicable to Trumbauer, this policy does not promise that a probationary employee will not be discharged if Group Health determines that, for reasons unrelated to the employee's actual performance of job tasks, continued employment is inappropriate. Trumbauer asserts that Group Health fostered an "atmosphere of security," but this alone is insufficient to establish a legal obligation on the part of Group Health. *Id.*

As Trumbauer cannot seek relief under the express terms of the collective bargaining agreement and the court finds no substantial evidence of modification or supplementation of this agreement, Trumbauer cannot establish a claim under Section 301. Accordingly, Group Health must be granted summary judgment on Trumbauer's Section 301 claim.

### III. TORT CLAIMS

■ In the complaint, Trumbauer claims that his termination violated public policy

against discrimination on the basis of a social relationship and impinged his freedom of association and right to privacy under the Washington State Constitution. As these claims do not require interpretation of the collective bargaining agreement, these claims are not pre-empted by Section 301 of LMRA. *See Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985).

■ In order to establish a termination in violation of public policy, Trumbauer must first identify a "stated public policy, either legislatively or judicially recognized," that may have been violated. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 232, 685 P.2d 1081, 1089 (1984). The court is aware of no such policy against discrimination based on a social relationship. Trumbauer cites none. The court concludes, therefore, that Trumbauer fails to set forth a claim upon which relief may be granted. Accordingly, Trumbauer's discrimination claim must be dismissed.

Trumbauer asserts claims under three provisions of the Washington State Constitution: Article I, Section 3, the due process provision; Article I, Section 5, the free speech guarantee; and Article I, Section 7, the search and seizure provision.

■ The due process and search and seizure provisions of the Washington State Constitution apply only to state action. *See Kennebec, Inc. v. Bank of the West,* 88 Wash.2d 718, 726, 565 P.2d 812, 816 (1977) (due process); *State v. Ludvik,* 40 Wash. App. 257, 262, 698 P.2d 1064, 1067 (1985) (search and seizure). Trumbauer's claims under these provisions must be dismissed because Trumbauer's allegations present a purely private dispute. Although Trumbauer suggests that Group Health, as a provider of medical care, is regulated by the state, this circumstance is insufficient to establish that Group Health's actions constitute state action.

■ The Washington Supreme Court has held that state action is not necessary for a claim under the state free speech guarantee and that application of this guarantee is determined by a process of balancing speech rights against opposing property rights. *Alderwood Assocs. v. Washington Environmental Council,* 96 Wash.2d 230, 243–46, 635 P.2d 108, 116–17 (1981). However, *Alderwood* involved circulation of petitions in a shopping mall and an attempt by the mall owners to stop this activity. The Washington Supreme Court felt that under the circumstances of the case the speech rights of those circulating the petitions outweighed the property rights of the mall owners. The case did not involve parties whose relationship is governed by contract. As between parties to a contract, property rights created by the contract must outweigh any speech or associational rights that may be affected by the contract. In other words, a party to a contract may agree to waive speech or associational rights. The court does not believe that the Washington Supreme Court intended *Alderwood* to limit the freedom to do so. In the present case, the collective bargaining agreement provides that a probationary employee can be discharged without recourse to the grievance procedure established by the agreement and is essentially terminable at will. Insofar as such discharge might otherwise impinge on an employee's speech or associational rights, these rights have been waived. Accordingly, the court concludes that Group Health is entitled to summary judgment as to Trumbauer's claim under the state free speech guarantee.

## IV. EQUITABLE CLAIM

■ Trumbauer argues that Group Health is estopped from discharging him based on his relationship with Sawyer because Group Health knew about the relationship when Trumbauer was hired and because Group Health has not enforced its anti-nepotism policy against other employees. This argument assumes that Group Health must present a reason for Trumbauer's discharge. However, the court has found that, under the collective bargaining

agreement, a new employee is terminable at will for three months.

## V. CONCLUSION

The court concludes that Group Health is entitled to summary judgment as to each of Trumbauer's claims for relief.

IT IS NOW, THEREFORE, ORDERED that Group Health's motion for summary judgment is GRANTED. This action is dismissed.