(No. 47770.—

USA I LEHNDORFF VERMOEGENSVERWALTUNG GmbH & Cie, Appellant, v. COUSINS CLUB, INC., Appellee.

*Opinion filed May 14, 1976.—Rehearing denied June 28, 1976.*

12

Jay Erens, Stephen Novack, and Steven L. Harris, of Levy and Erens, of Chicago, for appellant.

Robert A. Sherwin and Theodore R. Sherwin, of Chicago (Marvin Brusman, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(a), 58 Ill.2d R. 302(a)) from a judgment of the circuit court of Cook County holding the Illinois distress for rent provisions (Ill. Rev. Stat. 1973, ch. 80, pars. 16-34) to be unconstitutional.

In our State when a tenant falls in arrears in rent, the lessor may distrain the tenant's personal property found on the leased premises. The lessor commences a distress for rent action by executing a distress warrant. The lessor can either seize the tenant's property and remove it from the premises, or he distrains the property and allows it to

remain on the premises. The lessor must inventory the property distrained and then file a copy of the inventory and of the warrant with the clerk of the circuit court. The distress warrant is treated as a complaint and may be amended as other complaints. Following the filing of the inventory and the warrant, the clerk issues a summons for service upon the tenant. The defendant then may respond and raise any counterclaim which "would have been proper if the suit had been for the rent." Thereafter, the cause proceeds in the same manner as a suit for attachment. The tenant may secure the release of his property, at any time prior to a determination of the lessor's claim, by filing a bond in twice the amount of the rent claimed to be in arrears. If the court determines in favor of the lessor, he may execute his judgment against any property of the tenant; but if the landlord is still in possession of the distrained property, he must first have that property sold to satisfy his judgment. Ill. Rev. Stat. 1973, ch. 80, pars. 16-26.

Here the lessor's (the plaintiff's) agent distrained the defendant's property on December 20, 1974. Copies of the inventory and the distress warrant were filed with the clerk of the circuit court of Cook County on December 24, 1974. The summons was issued and it was served along with copies of the warrant and of the inventory. On March 27, 1975, the defendant filed a motion to dismiss contending that since its property was distrained without a prior hearing and without judicial approval, the plaintiff had violated its right to due process. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2.) After deciding that there was no State involvement in the distraint itself and therefore no denial of due process by State action, the trial court declared that the provisions requiring a lessor to file copies of the warrant and of the inventory with the court clerk, for securing the issuance and service of the summons with copies of the warrant and of the inventory, and the provision enabling a tenant to file a bond for twice the

amount of the rent claimed to secure the release of the distrained property constituted State actions. (The defendant did not post a bond.) The court then held that since the statutes allowed this to be performed "without appearance before and approval of a judicial officer," the defendant was denied due process.

The only question presented to us is whether the State was "significantly involved," as the inquiry was framed in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 32 L. Ed. 2d 627, 637, 92 S. Ct. 1965, in the actions of the plaintiff subsequent to the distraint so as to constitute action by the State and thus give the defendant the basis for complaining that he was not given due process of law.

The resolution of the question presented here is not an easy one. Under the statutory procedure we have described, the actual distraint is accomplished by the acts of the lessor; no State action is involved in the procedure. The provision for distraint is a codification of a landlord's common law remedy. "A landlord had the right at common law to distrain the goods and chattels of his tenant for rent due and in arrear. And he might sell the same without the authority of legal process." (*Sketoe v. Ellis,* 14 Ill. 75, 76; see *Bartlett v. Sullivan,* 87 Ill. 219; *Penny v. Little,* 4 Ill. (3 Scam.) 301; 2 F. Pollock & F. Maitland, The History of English Law 574-78 (2d ed. 1903); see generally *Fuentes v. Shevin,* 407 U.S. 67, 79 n.12, 32 L. Ed. 2d 556, 569 n.12, 92 S. Ct. 1983, 1993 n.12.

There are numerous holdings that when a creditor exercises his self-help remedy to repossess personal property as authorized under section 9—503 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—503) or under similar statutes, there is no State action involved so far as the question of due process is concerned. (See, *e.g., Gary v. Darnell,* 505 F.2d 741 (6th Cir. 1974); *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir. 1974); *Gibbs v. Titelman,* 502 F.2d 1107 (3d Cir. 1974), *cert.*

*denied,* 419 U.S. 1039 (1974); *Nowlin v. Professional Auto Sales, Inc.,* 496 F.2d 16 (8th Cir. 1974), *cert. denied,* 419 U.S. 1006 (1974); *Shirley v. State National Bank,* 493 F.2d 739 (2d Cir. 1974), *cert. denied,* 419 U.S. 1009 (1974); *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1974), *cert. denied,* 419 U.S. 1006 (1974); *Bichel Optical Laboratories, Inc. v. Marquette National Bank,* 487 F.2d 906 (8th Cir. 1973); *John Deere Co. v. Catalano,* 525 P.2d 1153 (Colo. 1974); *Northside Motors of Florida, Inc. v. Brinkley,* 282 So. 2d 617 (Fla. 1973); *Benschoter v. First National Bank,* 218 Kan. 144, 542 P.2d 1042 (1975); *King v. South Jersey National Bank,* 66 N.J. 161, 330 A.2d 1 (1974); *Brown v. United States National Bank,* 265 Ore. 234, 509 P.2d 442 (1973); *Faircloth v. Old National Bank,* 86 Wash. 2d 1, 541 P.2d 362 (1976); *Cook v. Lilly,* 208 S.E.2d 784 (W. Va. 1974); see also *Rainey v. Ford Motor Credit Co.,* 313 So. 2d 179 (Ala. 1975).) The common thread running through almost all of these decisions is that the simple codification of the common law remedy does not constitute State action; that the enactment of such statutes does not constitute the encouragement of private action by the State; and that the regulation of private conduct by statute does not necessarily significantly involve the State in the regulated conduct. We judge that the State is not "significantly involved," where, as here, the lessor takes possession of his tenant's property pursuant to a statute that simply codifies the lessor's common law right to do this and that does not have the State carry out the lessor's rights. *Davis v. Richmond,* 512 F.2d 201 (1st Cir. 1975); *Turner v. Impala Motors; Adams v. Southern California First National Bank; Shirley v. State National Bank;* see also *Anastasia v. Cosmopolitan National Bank,* 527 F.2d 150 (7th Cir. 1975), overruling *Collins v. Viceroy Hotel Corp.,* 338 F. Supp. 390 (N.D. Ill. 1972).

We would observe that our statute rather than encouraging private action under the right of distraint,

abridges the rights of the lessor. Under common law, the landlord had the right to distrain his tenant's property and sell it without judicial process. Our present statutory procedure substantially restricts this right of the landlord; he is now required to submit his claim for rent to a court and he can sell the property only after he obtains a judgment. (*Sketoe v. Ellis,* 14 Ill. at 75-76.) It is somewhat paradoxical that it is the statutory procedures that substantially restrict the landlord's common law right, and as a corollary favorably affect the tenant, of which the defendant complains. It urges that there is State action within the due process concept when the plaintiff subsequent to the distraint follows the procedure outlined by the statutes.

We do not consider that the cases cited by the defendant support its position. The defendant offers three cases in which distress for rent statutes were found unconstitutional. (*Shaffer v. Holbrook,* 346 F. Supp. 762 (S.D. W. Va. 1972); *Blocker v. Blackburn,* 228 Ga. 285, 185 S.E.2d 56 (1971); *State ex rel. Payne v. Walden,* 190 S.E.2d 770 (W. Va. 1972).) But in these cases, and in other cases the defendant cites, as well as cases our own research discloses (*North Georgia Finishing, Inc. v. Di-Chem,* 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719; *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983; *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820; *Hernandez v. Danaher,* 405 F. Supp. 757 (N.D. Ill. 1975); *Sena v. Montoya,* 346 F. Supp. 5 (D.N.M. 1972); *Holt v. Brown,* 336 F. Supp. 2 (W.D. Ky. 1971)), State officers were actively involved in the seizure of property. The property was directly seized by the officer or he was involved in its seizure. These cases are distinguishable because, as we have observed, seizure here is effected by the landlord alone.

The holding in *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970), which the defendant also cites, in which the court concluded that the landlord's seizure of his tenant's

property constituted State action, is distinguishable also. The court there noted that in Texas such seizures had been traditionally performed by a State official. The court considered that the State was significantly involved when it authorized a private person to perform what had been traditionally a public function. (430 F.2d 430, 439.) Similar decisions include *Johnson v. Riverside Hotel, Inc.,* 399 F. Supp. 1138 (S.D. Fla. 1975); *Stroemer v. Shevin,* 399 F. Supp. 993 (S.D. Fla. 1973); *Barber v. Rader,* 350 F. Supp. 183 (S.D. Fla. 1972); *Blye v. Globe-Wernicke Realty Co.,* 33 N.Y.2d 15, 347 N.Y.S.2d 170, 300 N.E.2d 710 (1973). These cases are not relevant here. In Illinois a landlord has always had the right to distrain his tenant's property; he is not performing what hitherto had been a public function.

The question in all of these cases is not simply whether there is State action involved. Rather, the question is whether the role of the State is sufficiently significant, constitutionally speaking, so that one may invoke the protection afforded by the due process clause. In *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 32 L. Ed. 2d 627, 637, 92 S. Ct. 1965, where the appellant, Moose Lodge No. 107, refused to serve a member's guest because of the guest's race, the court stated that where the impetus for the conduct complained of is private, the State must be "significantly involved." We note, too, that in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449, the court did not find State action where a State-regulated utility terminated service to a customer without affording the customer a hearing prior to the termination. (For a similar holding see *Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638 (7th Cir. 1972), *cert. denied,* 409 U.S. 1114 (1972).) In *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1974), *cert. denied,* 419 U.S. 1006 (1974), the court held that there is no State action within the meaning of our question when a creditor repossesses his debtor's

auto pursuant to statutory authority, though the State regulates retail installment sales contracts, licenses repossessors and clears title for repossessed vehicles for the benefit of creditors. (Supporting this, see also Burke and Reber, *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment,* 47 S. Cal. L. Rev. 1, 5-23 (1973).) Although these cases are factually dissimilar from the case here, they illustrate that the simple fact or presence of some State action is insufficient and we consider they support our conclusion that there is not significant State action involved in the statute here.

As we view it, the General Assembly in enacting the statute weighed the landlord's interest in exercising his common law right to distrain and sell a tenant's property without the necessity of judicial process against requiring a judicial determination prior to any distraint and sale. The legislature concluded that the common law right of the lessor to distrain his tenant's property should be preserved, but ameliorated the position of the tenant by providing that the landlord could not sell it without a judicial determination in his favor. It is true should a tenant wish to secure a release of the distrained property he must post a bond for double the amount of the rent claimed and, though the provision for double the amount of the claim is somewhat disturbing, when cooly viewed it really represents a substantial abridgement of the lessor's rights and an advantage to the tenant. (As has been stated, no bond was posted. We need not consider here questions which might arise from an abuse of the bond provision by a lessor.) No longer can the lessor sell the property immediately following the distraint; now the tenant has the right to regain distrained property. One must conclude that through the statute the State has restricted the landlord's rights and has improved substantially the position of the tenant. Indeed, it may be said there is statutory intervention for the benefit of the tenant and that the State

action is only for his advantage. Decisions that have observed that the statutory procedures were for the benefit of the defendant include: *Gibbs v. Titelman,* 502 F.2d 1107, 1111-12 (3d Cir. 1974), *cert. denied,* 419 U.S. 1039 (1974); *Shirley v. State National Bank,* 493 F.2d 739, 743 (2d Cir. 1974), *cert. denied,* 419 U.S. 1009 (1974).

It is appropriate to comment on the possibility that were a lessee to be successful in having our statute declared unconstitutional, it might prove indeed to be a pyrrhic victory. As we have noted, the landlord has a common law remedy which allows him to seize and sell a tenant's property without necessity of legal process. If our statutes were to be adjudged unconstitutional, the landlord might claim his common law remedy and seek to proceed against the tenant unhindered by the restrictions of the statutes.

We are not persuaded by the defendant's contention that the due process clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 2) prohibits an individual, as well as the State, from depriving another of his property without due process of law.

The due process clause of the Constitution of 1970 provides that "No person shall be deprived of life, liberty or property without due process of law ***." Each of this State's constitutions has had a similar provision and there never has been the interpretation the defendant urges. (Ill. Const. 1818, art. VIII, sec. 8; Ill. Const. 1848, art. XIII, sec. 8; Ill. Const. 1870, art. II, sec. 1.) Arthur T. Lennon, a member of the Bill of Rights Committee of the Sixth Illinois Constitutional Convention, when he presented the proposed present due process clause to the convention, stated:

"Now one thing I think we should make clear, although it's hard for me to believe anybody would not realize this, due process only has application to actions by the state in relationship to individuals." (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1496 (hereafter cited as Proceedings).) See 5 Proceedings

3686; see generally *People v. Belcastro,* 356 Ill. 144, 147; G. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 9-15.

For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

*Reversed and remanded.*