SECOND DIVISION
September 26, 2006

No. 1-05-4000

THEO HILL,                                    )        Appeal from the
                                              )            Circuit Court of
    Plaintiff-Appellee,              )        Cook County.
                                              )
        v.                 )
                                              )
PS ILLINOIS TRUST,                            )        Honorable
                                              )        Sophia Hall,
    Defendant-Appellant.            )        Judge Presiding.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

The storage facility sold off plaintiff's property because his rent payments were overdue.  That sale gives rise to the plaintiff's constitutional and statutory claims we address in this appeal.

Plaintiff Theo Hill filed a class action lawsuit against defendant PS Illinois Trust (PS), alleging the Illinois Self-Storage Facility Act (Storage Act) (770 ILCS 95/1 *et. seq.* (West 2004)) violated the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).  Plaintiff also alleged on his own behalf that PS's actions in conducting a lien sale under the Storage Act were "unfair and deceptive" under the Illinois Consumer Fraud and Deceptive Business Practices Act (CFA) (815 ILCS 505/2 (West 2004)).

PS moved to dismiss plaintiff's case pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 2-615 (West 2004)).  The trial court granted PS's

motion.

On appeal, plaintiff contends the trial court erred when it determined he failed to allege the requisite state action necessary to support a claim under the Illinois due process clause, and that he failed to state a claim under the CFA. We affirm in part and reverse and remand in part.

FACTS

The pleadings reveal the facts relevant to this appeal. On August 5, 2003, defendant entered into a contract with PS for the rental of a storage locker in order to store his personal property. Plaintiff made his monthly payments for August and September. On October 17, 2003, plaintiff called PS's storage facility to inform it that he would be late with October's rent payment, but would make the payment later in the week. Plaintiff was told his account was past due, but was not told his property would be auctioned off if payment was not made.

Plaintiff was unable to make the October and November rental payments. On December 5, 2003, plaintiff called PS to check the balance on his account and arrange payment. Plaintiff was told his belongings were auctioned off on November 25, 2003. Plaintiff's personal property was worth in excess of $25,000. According to plaintiff, he never received notice that PS would be auctioning off his property in order to enforce a lien created under section 3 of the Storage Act. 770 ILCS 95/3 (West 2004).

On January 26, 2005, plaintiff called PS to demand the return of any balance remaining from the lien sale, as required by section 4(j) of the Storage Act. 770 ILCS 95/4(j) (West 2004). A representative of PS told plaintiff "I have no idea what you are

talking about." On February 9, 2005, plaintiff faxed PS a letter demanding the return of any balance remaining. PS never responded to the letter.

Plaintiff filed a two-count complaint against PS in the circuit court of Cook County. In Count I, plaintiff sought, on behalf of himself and a putative class of PS customers, a declaratory judgment that the Storage Act was unconstitutional "on its face and as applied" because it failed to provide adequate notice. In Count II, plaintiff alleged on his own behalf that PS, in violation of the CFA, engaged in unfair and deceptive conduct when it sold his property.

PS moved to dismiss the complaint pursuant to section 2-615 of the Code. PS contended: (1) plaintiff failed to allege the requisite state action necessary to support a claim under the due process clause of the Illinois State Constitution; and (2) plaintiff failed to allege any facts that would constitute an unfair act in violation of the CFA. The trial court dismissed Count I and gave plaintiff time to amend his claim under the CFA. Defendant then filed a motion to amend his complaint. The trial court denied plaintiff's motion to amend and dismissed the case with prejudice. Plaintiff appealed the dismissal of the CFA and declaratory judgment claims, but did not appeal from the trial court's refusal to allow him to amend his complaint, nor did he appeal dismissal of his conversion claim.

DECISION

A section 2-615 motion to dismiss challenges only the legal sufficiency of the complaint. 735 ILCS 5/2-615 (West 2004); Jarvis v. South Oak Dodge, Inc., 201 Ill. 2d 81, 85, 773 N.E.2d 641 (2002). The central inquiry is whether the allegations of the

complaint, when considered in the light most favorable to the plaintiff, are sufficient to state a cause of action relief may be granted on. Jarvis, 201 Ill. 2d at 86; Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 490, 675, N.E.2d 584 (1996). We review *de novo* the dismissal of a complaint under section 2-615 of the Code. Jarvis, 201 Ill. 2d at 86.

I. Due Process

Plaintiff contends the trial court erred when it determined he failed to allege the requisite state action necessary to support a claim under the Illinois due process clause.

Initially, we note plaintiff has not indicated he complied with Supreme Court Rule 19 (134 Ill. 2d R. 19), which requires a litigant challenging the constitutionality of a statute, ordinance, or administrative regulation to serve notice of the challenge upon the Attorney General or other affected agency or officer. While we recognize the failure of a litigant to strictly comply with the rule may result in forfeiture, our Supreme Court has concluded that "a party's failure to comply with Rule 19 does not deprive the court of jurisdiction to consider the constitutional issue." Village of Lake Villa v. Stokovich, 211 Ill. 2d 106, 119, 810 N.E.2d 13 (2004); Serafin v. Seith, 284 Ill. App. 3d 577, 672 N.E.2d 302 (1996) ("[m]oreover, even if the issue were not waived, we believe that [plaintiff's] constitutional arguments are without merit.") We will decide the issue, although its ripeness for consideration is dubious.

To assert a violation of the Illinois due process clause, a plaintiff must allege a state action deprived him of a protected right, privilege, or immunity. In re Adoption of L.T.M., 214 Ill. 2d 60, 73, 824 N.E.2d 221 (2005); USA I Lehndroff Vermoegensverwaltung GmbH & Cie v. Cousins Club, Inc., 64 Ill. 2d 11, 15-16, 348

N.E.2d 831 (1976). The Illinois due process clause stands "as a prohibition against governmental action, not action by private individuals." Methodist Medical Center of Illinois v. Taylor, 104 Ill. App. 3d 713, 717, 489 N.E.2d 351 (1986).

Plaintiff contends state action was properly alleged in this case because the State of Illinois "authorized" PS, under section 4 of the Act, to violate his constitutional rights by selling his property without due process. See 770 ILCS 95/4 (West 2004). Plaintiff contends there are three distinct tests for determining whether there is state action. See Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 621-22, 111 S. Ct. 2077, 2083, 114 L.Ed.2d 660, 674 (1991). Plaintiff contends the third test, the "state authorization model," applies in this case because the Storage Act specifically authorized PS to conduct the lien sale.

In response, PS contends plaintiff's failure to attribute state action to PS's decision to sell his goods is fatal to his due process claim. Defendant contends section 4 of the Act permitted, but did not compel, PS to sell plaintiff's belongings. See 770 ILCS 95/3 (West 2004). PS contends merely permitting a private actor to make such a choice cannot support a finding of state action.

When appropriate, the Illinois Supreme Court has interpreted our state due process clause to provide greater protections than its federal counterpart. Lewis E. v. Spagnolo, 186 Ill. 2d 198, 227, 710 N.E.2d 798 (1999) "Nonetheless, federal precedent interpreting the federal due process clause is useful as a guide in interpreting the Illinois provision." Spagnolo, 186 Ill. 2d at 227.

To support his contention, plaintiff relies on three United States Supreme Court

decisions: Edmonson, 500 U.S. 614, 111 S. Ct. 2077, 114 L.Ed.2d 2077; Shelley v. Kraemer, 334 U.S. 1, 68 S. Ct. 836, 92 L.Ed. 1161 (1948); and Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1967).

In Edmonson, the Court noted that "in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." (Citations Omitted.) Edmonson, 500 U.S. at 621-22, 111 S. Ct. at 2083, 114 L.Ed.2d at 674. However, the Court also noted that "[a]lthough private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action, our cases have found state action when private parties make extensive use of state procedures with 'overt, significant assistance of state officials.' " (Citations omitted.) Edmonson, 500 U.S. at 622, 111 S. Ct. at 2083, 114 L.Ed.2d at 674.

In Shelly, the Court concluded restrictive racial covenant agreements, standing alone, could not be regarded as a violation of any rights guaranteed by the Fourteenth Amendment. "So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there has been no action by the State." Shelly, 334 U.S. at 13, 68 S. Ct. at 842, 92 L.Ed. at 1180. When the restrictive terms and purposes of the agreements were judicially enforced in state courts, however, sufficient state action was present to bring them under the purview of the Fourteenth Amendment. Shelly, 334 U.S. at 13-15, 68 S. Ct. at 842, 92 L.Ed. at

1-05-4000

1180.

Finally, in Reitman, the U.S. Supreme Court held a California statute not only repealed an existing law forbidding private racial discriminations, but "was intended to authorize, and does authorize, racial discrimination in the housing market." The California Supreme Court held the statute would significantly encourage and involve the State in private discrimination. After analyzing the decision, the Court found it had not been presented with any persuasive considerations indicating the California judgment should be overturned. Reitman, 387 U.S. at 381, 87 S. Ct. at 838, 18 L.Ed.2d at 1634.

By contrast, in Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 151, 98 S. Ct. 1729, 1731, 56 L.Ed.2d 185, 190 (1978), a case similar to the instant action, the Court considered whether a warehouseman's proposed sale of goods entrusted to him for storage in order to collect overdue storage fees, as permitted by a New York statute, was an action properly attributable to the State of New York. Plaintiff initiated a class action in federal district court under section 1983 of the United States Code (42 U.S.C. § 1983), seeking damages, an injunction against the threatened sale of her belongings, and a declaration that such a sale pursuant to the New York statute would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. In order to establish a section 1983 claim, plaintiff was required to show: (1) she was deprived of a right "secured by the Constitution and the laws of the United States;" and (2) Flagg Brothers deprived her of this right acting "under color of any statute of the State of New York." 436 U.S. at 155, 98 S. Ct. at 1733, 56 L.Ed.2d at 192.

The Court held the New York statute had done nothing more than "authorize (and indeed limit)--without participation by any public official--what Flagg Brothers would tend to do, even in the absence of such authorization, *i.e.*, dispose of respondents' property in order to free up its valuable storage space."  The proposed sale pursuant to the lien was not a significant departure from traditional private arrangements.  Flagg Brothers, 436 U.S. at 163, 98 S. Ct. at 1737, 56 L.Ed.2d at 197.  The "total absence of overt official involvement" distinguished the case from earlier decisions imposing procedural restrictions on creditors' remedies.  Flagg Brothers, 436 U.S. at 157, 98 S. Ct. at 1734, 56 L.Ed.2d at 194.

Notwithstanding, the plaintiffs contended Flagg Brothers' proposed action under the statute was properly attributable to the State because "the State has authorized and encouraged it" by enacting the statute.  Flagg Brothers, 436 U.S. at 164, 98 S. Ct. at 1737, 56 L.Ed.2d at 198.  Rejecting the plaintiffs' contention, the Court held its cases reflect that a State is responsible for the act of a private party only " 'when the State, by its law, has compelled the act.' "  Flagg Brothers, 436 U.S. at 164, 98 S. Ct. at 1737, 56 L.Ed.2d at 198, quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 170, 90 S. Ct. 1598, 1615, 26 L.Ed.2d 142, 161-62 (1970).  The Court noted it had "never held that a State's mere acquiescence in a private action converts that action into that of the State."  Flagg Brothers, 436 U.S. at 164, 98 S. Ct. at 1737, 56 L.Ed.2d at 198.  Flagg Brothers' actions pursuant to the statute, without something more, were not sufficient to justify characterizing Flagg Brothers as a state actor.  The Court did not directly or indirectly limit its decision to section 1983 cases.

1-05-4000

Plaintiff contends <u>Flagg Brothers</u> is inapplicable here because the plaintiff in that case sought to hold individuals personally liable under section 1983 of the United States Code, rather than simply seeking to declare the New York statute unconstitutional. Plaintiff contends the issue of whether a defendant is a state actor is not relevant in an action seeking only to declare a state statute unconstitutional.

Contrary to plaintiff's contention, however, the United States Supreme Court has noted: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 928, 102 S. Ct 2744, 2749, 73 L.Ed.2d 482, 489 (1982), quoting <u>United States v. Price</u>, 383 U.S. 787, 794, n. 7, 86 S. Ct. 1152, 1157, 16 L.Ed.2d 267, 272 (1966).

For example, in <u>American Manufacturers Mutual Insurance Co. v. Sullivan</u>, 526 U.S. 40, 50, 119 S. Ct. 977, 985, 143 L.Ed.2d 130, 143 (1990), the plaintiffs, hoping to avoid the traditional application of the Court's section 1983 state-action cases, characterized their claim as a "facial" or "direct" challenge to the procedures contained in the statute. The plaintiffs contended the Court need not concern itself with the "identity of the defendant" or the "act or decision by a private actor or entity who is relying on the challenged law." <u>Sullivan</u>, 526 U.S. at 50, 119 S. Ct. at 985, 143 L.Ed.2d at 143. The Court held the argument ignored its repeated insistence that state action requires:

> "*both* an alleged constitutional deprivation 'caused by the
>
> exercise of some right or privilege created by the State or by

a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.' " (Emphasis in original.) Sullivan, 526 U.S. at 50, 119 S. Ct. at 985, 143 L.Ed.2d at 143, quoting Lugar, 457 U.S. at 937, 102 S. Ct. at 2753, 73 L.Ed.2d at 495.

The Court noted that in cases involving extensive state regulation of private activity, "we have consistently held that '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.' " Sullivan, 526 U.S. at 52, 119 S. Ct. at 986, 143 L.Ed.2d at 144-45, quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350, 95 S. Ct. 449, 453-54, 42 L.Ed.2d 477, 484 (1974). A private actor will not be held to constitutional standards unless " 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " Sullivan, 419 U.S. at 52, 119 S. Ct. at 986, 143 L.Ed.2d at 144-45, quoting Jackson, 419 U.S. at 350, 95 S. Ct. at 453-54, 42 L.Ed.2d at 484.

Whether such a "close nexus" exists depends on whether the State exercised coercive power or provided such significant encouragement, either overt or covert, that the choice must be deemed to be that of the State. Sullivan, 419 U.S. at 52, 119 S. Ct. at 986, 143 L.Ed.2d at 144-45; Jackson, 419 U.S. at 350, 95 S. Ct. at 453-54, 42

L.Ed.2d at 484. "Action taken by private entities with the mere approval or acquiescence of the State is not state action." Sullivan, 419 U.S. at 52, 119 S. Ct. at 986, 143 L.Ed.2d at 144-45.

The dividing line we seek to apply in this case was clearly drawn by the U.S. Supreme Court in Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S. Ct. 1340, 99 L.Ed.2d 565 (1988). There, the question was whether a provision of Oklahoma's probate laws requiring contract claims against an estate be presented within a specified time period violated the Due Process Clause.

The issue was whether state action wrongfully deprived a creditor of its property rights. Citing Flagg Brothers, the Court observed: "Private use of state-sanctioned private remedies or procedures does not rise to the level of state action." Tulsa Professional Collection Services, Inc., 485 U.S. at 485, 108 S. Ct. at 1345, 99 L.Ed.2d at 575. "But," the Court continued, "when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Professional Collection Services, Inc., 485 U.S. at 486, 108 S. Ct. at 1345, 99 L.Ed.2d at 576.

The Court found significant state action because the probate court was "intimately involved throughout, and without that involvement the time bar is never activated." Tulsa Professional Collection Services, Inc., 485 U.S. at 487, 108 S. Ct. at 1346, 99 L.Ed.2d at 576. In the case before us, there was no significant state action by a court or by any other state official.

Similarly, the Illinois Supreme Court considered whether the Illinois distress for

rent provisions (Ill. Rev. Stat. 1973, ch. 80, pars. 16-34) were unconstitutional in

Cousins Club, Inc., 64 Ill. 2d 11.  Under the distress for rent provisions, the actual

distraint was accomplished by the acts of the lessor; no State action was involved in the

procedure.  The court noted:

> "There are numerous holdings that when a creditor exercises
>
> his self-help remedy to repossess personal property as
>
> authorized under section 9-503 of the Uniform Commercial
>
> Code (Ill. Rev. Stat. 1973, ch. 26, par. 9-503) or under
>
> similar statutes, there is no State action involved so far as
>
> the question of due process is concerned."  Cousins Club,
>
> Inc., 64 Ill. 2d at 15.

The question was not simply whether state action was involved, but rather

whether the role of the State was "sufficiently significant, constitutionally speaking, so

that one may invoke the protection afforded by the due process clause."  Cousins Club,

Inc., 64 Ill. 2d at 18.  The court held the State was not "significantly involved, where, as

here, the lessor takes possession of his tenant's property pursuant to a statute that

simply codifies the lessor's common law right to do this and that does not have the

State carry out the lessor's rights."  Cousins Club, Inc., 64 Ill. 2d at 16.

In an attempt to circumvent the holdings in Flagg Brothers, Sullivan, and Cousins

Club, Inc., plaintiff contends the United States Supreme Court "unequivocally" held in

Lugar that: "While private misuse of a state statute does not describe conduct that can

be attributed to the State, the procedural scheme created by the statute obviously is the

ˇ12ˇ

product of <u>state action</u>." (Emphasis Added.) <u>Lugar</u>, 457 U.S. at 941, 102 S. Ct. at 2756, 73 L.Ed.2d at 498. Plaintiff, however, ignores the <u>Lugar</u> Court's determination that a state statute "is subject to constitutional restraint and properly may be addressed in a § 1983 action, <u>if the second element of the state-action requirement is met as well</u>." (Emphasis added.) <u>Lugar</u>, 457 U.S. at 941, 102 S. Ct. at 2756, 73 L.Ed.2d at 498. The second element is whether, under the facts of the case, a private party may be appropriately characterized as a state actor. <u>Lugar</u>, 457 U.S. at 939, 102 S. Ct. at 2754-55, 73 L.Ed.2d at 496-97.

In this case, there is no question plaintiff's deprivation of property resulted from the exercise of a right or privilege having its source in state authority, *i.e.*, the lien sale conducted pursuant to section 4 of the Storage Act. See 770 ILCS 95/4 (West 2004). Therefore, the question becomes whether PS may be appropriately characterized as a "state actor." See <u>Sullivan</u>, 419 U.S. at 50, 119 S. Ct. at 985, 143 L.Ed.2d at 143; <u>Lugar</u>, 457 U.S. at 939, 102 S. Ct. at 2754-55, 73 L.Ed.2d at 496-97.

Similar to the statutes in <u>Flagg Brothers</u> and <u>Sullivan</u>, the Storage Act authorized, but did not require or compel, PS to sell plaintiff's personal property stored at the facility in order to satisfy a lien for past due rent. Besides establishing the right to a lien and providing a self-help remedy by enacting the Storage Act, the State was not significantly involved in the seizure and sale of plaintiff's property. See <u>Cousins Club, Inc.</u>, 64 Ill. 2d at 16.

While we recognize the State's decision to provide storage facility owners the option of conducting a lien sale can be seen as encouragement to do just that, "this kind

of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy." See Sullivan, 526 U.S. at 53, 119 S. Ct. at 986, 143 L.Ed.2d at 146. Because the State did not compel, assist in, or significantly encourage the seizure and sale of plaintiff's property, we find PS's actions did not amount to "state action." See Sullivan, 526 U.S. at 53, 119 S. Ct. at 986, 143 L.Ed.2d at 146; Flagg Brothers, 436 U.S. at 164, 98 S. Ct. at 1737, 56 L.Ed.2d at 198.

We therefore conclude the trial court did not err in dismissing Count I of plaintiff's complaint.

II. Consumer Fraud

Plaintiff contends the trial court erred in dismissing Count II of his complaint because he adequately stated a cause of action under the unfair conduct prong of the Illinois Consumer Fraud Act.

The CFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices." Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403, 419, 775 N.E.2d 951 (2002). A complaint raising a claim under the CFA "must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint. Robinson, 201 Ill. 2d at 419; Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 502, 675 N.E.2d 584 (1996).

Unfair or deceptive acts or practices are described in the CFA as:

"including but not limited to the use or employment of any

deception, fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or

omission of any material fact, with intent that others rely

upon the concealment, suppression or omission of such

material fact." 815 ILCS 505/2 (West 2004).

A plaintiff may allege that conduct is unfair under the CFA without alleging that the conduct is deceptive. Saunders v. Michigan Avenue National Bank, 278 Ill. App. 3d 307, 313, 662 N.E.2d 602 (1996). In determining whether conduct is unfair, the CFA mandates consideration "be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 2004). In Federal Trade Comm'n v. Sperry, 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 905, 31 L.Ed.2d 170, 178 (1972), the United States Supreme Court set out the requirements for establishing unfair conduct: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes consumers substantial injury. See also Saunders, 278 Ill. App. 3d at 313 ("the defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative but to submit, and injure the consumer.")

In dismissing Count II of the complaint, the trial court found: "Plaintiff fails to allege that [PS] did not comply with the provisions of the Self Storage Facilities Act; therefore, Plaintiff fails to allege facts that constitute a violation of the act on any basis, let alone unfairness."

Plaintiff's complaint, however, alleged PS violated the CFA's prohibition against unfair practices by failing to provide plaintiff with any form of statutorily-required notice that his property was being sold. Plaintiff specifically alleged that he "never received notice, either by telephone, in-person delivery or certified mail, that [PS] would be seeking to enforce the lien created in its favor," as "required both by the Act itelf––see 770 ILCS 95/4(A)(C)––and by the express terms of the rental agreement Plaintiff signed." Plaintiff also alleged PS engaged in unfair conduct by: failing to inform him of the outcome of the lien sale, or even acknowledge that it was statutorily required to return any surplus from such sale to plaintiff on demand; selling his personal property without allowing him the opportunity to exercise his statutory right to redeem the property; and failing to return to him any funds recouped from the sale of goods over and above the lien amount after defendant made a demand for the surplus.

Furthermore, plaintiff alleged PS's conduct offended Illinois public policy, as embodied in the Storage Act; was unethical and oppressive because it was contrary to well-established industry practices and afforded him no reasonable opportunity to avoid the lien sale; and significantly harmed him because he lost nearly all of his possessions, including items of inestimable personal and sentimental value.

After reviewing the allegations contained in Count II of the complaint, taking them as true, we find they were sufficient to state a cause of action under the CFA for unfair conduct.

We therefore conclude the trial court erred in dismissing Count II of plaintiff's complaint.

CONCLUSION

We affirm the trial court's dismissal of Count I of plaintiff's complaint.  We reverse the trial court's dismissal of Count II of plaintiff's complaint and remand for further proceedings.

Affirmed in part; reversed and remanded in part.

HOFFMAN, and SOUTH, JJ., concur.